**Curtis Allen PAYNE, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 05–91–00687–CR.

Court of Appeals of Texas,
Dallas.

July 31, 1992.

Renie McClellan, Cedar Hill, for appellant.

Yolanda M. Joosten, Dallas, for appellee.

Before STEWART, OVARD and KAPLAN, JJ.

## OPINION

OVARD, Justice.

Curtis Allen Payne appeals his jury conviction for burglary of a building. Payne answered true to two enhancement paragraphs, and the jury assessed punishment at forty years' imprisonment. In two points of error, Payne complains that the trial court erred in admitting (1) a complaining witness's identification testimony and (2) hearsay testimony. We hold that the trial court properly admitted the witness's identification and that Payne waived any error in the admission of the hearsay testimony. We affirm the trial court's judgment.

## FACTS

Early on the morning of March 17, 1991, Sandra and Robert Page awoke to the sounds of a disturbance in their back yard. Robert went outside to see what was going on, while Sandra looked through their bedroom window. Sandra testified that, from the window, she observed a man inside their storage building, which was approximately twenty-five feet away. She said that her view was unobstructed and that the area was very well lit. Sandra saw the man, whom she later identified as Payne, take their lawn mower, pause to put up his jacket hood, and leave on foot with the mower. While watching Payne, Sandra called the police.

Officer Karen Favors testified that she and her partner arrested Payne approximately two and one-half hours after the burglary was reported. Favors stated that she and her partner stopped an automobile driven by Angelo Warren early the morning of March 17, 1991. The officers detained the car because the police computer showed that an arrest warrant existed for the car's owner. Curtis Payne was the passenger in Warren's car. The officers arrested Warren on a burglary warrant and searched the car. They found a lawn

mower in the trunk. Favors checked to see if anyone had reported a lawn mower stolen that evening and discovered that the Pages' mower was missing. Though the theft report gave no description of the Pages' mower, fresh mud on the mower aroused the officer's suspicions. Accordingly, the officers questioned both Warren and Payne. Favors said that Warren told her that "it was not his lawn mower, that he had picked up Mr. Payne as Mr. Payne was pushing the lawn mower down the street." Favors stated that she and her partner took Payne and the lawn mower into custody and proceeded to the Pages' home.

At the Pages' home, Robert described the mower, which matched the one police found with Payne. Sandra again gave the police her description of the burglar. The police then showed her Payne, and she identified him as the burglar. Sandra confirmed that, although she requested that Payne put his hood on, she would have recognized him with or without it. The officer confirmed that Sandra did not hesitate to identify Payne.

## THE IDENTIFICATION TESTIMONY

In his first point of error, Payne contends that the trial court erred in allowing the in-court identification of Payne by Sandra. Payne argues that Sandra's pretrial identification of him was unduly suggestive because he was handcuffed, in police custody, alone and because Sandra had been told that he had their lawn mower.

The practice of showing suspects individually to a person for identification, and not as a part of a lineup, has been widely condemned. *Stovall v. Denno*, 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967). However, a one-man identification, without more, does not violate due process. *Neil v. Biggers*, 409 U.S. 188, 198, 93 S.Ct. 375, 381, 34 L.Ed.2d 401 (1972); *Garza v. State*, 633 S.W.2d 508, 512 (Tex.Crim.App.1981) (op. on reh'g). Before setting aside a conviction based on an eyewitness identification at trial following an on-the-scene identification, the court must determine that the pretrial identification

was impermissibly suggestive and gave rise to a substantial likelihood of misidentification. *Garza,* 633 S.W.2d at 512.

▮ Absent clear and convincing evidence that the in-court identification is tainted by improper pretrial procedures, the in-court identification is always admissible. *Jackson v. State,* 628 S.W.2d 446, 448 (Tex.Crim.App. [Panel Op.] 1982). When the defendant challenges a complaining witness's in-court identification, the court must determine the witness's ability to reconstruct an accurate independent image of the criminal wrongdoer in comparison with the defendant's in-court appearance. *Id.* If the totality of the circumstances reveals no substantial likelihood of misidentification despite the suggestive pretrial identification procedure, the court will deem the identification testimony reliable and admissible. *Garza,* 633 S.W.2d at 513. In assessing the reliability of the in-court identification, we weigh the following nonexclusive factors against the corrupting effect of the suggestive identification procedure:

(1) The witness's opportunity to view the criminal at the time of the crime.

(2) The witness's degree of attention.

(3) The accuracy of the witness's prior description of the criminal.

(4) The level of certainty demonstrated at the trial confrontation.

(5) The time between the crime and the confrontation.

*Id.* Although the use of one-man identification is discouraged, one-man identification that takes place soon after the crime allows a witness to test his recollection while his memory is still fresh and accurate. *Lewis v. State,* 751 S.W.2d 895, 897 (Tex.App.—Houston [14th Dist.] 1988, no pet.). When coupled with the other factors listed above, the suspect identified soon after a crime is less likely to be misidentified. *See Hudson v. State,* 675 S.W.2d 507, 510 (Tex.Crim.App.1984) (witness's in-court identification allowed because she observed criminal act in progress, gave description to police, and identified defendant individually ten minutes later); *Lewis,* 751 S.W.2d at 898.

The record shows:

(1) Sandra saw Payne for several minutes both inside and outside the storage building.

(2) Sandra saw Payne's face at least twice, once from approximately twenty-five feet away and once at about thirty feet away. Both times were in well-lighted areas.

(3) Sandra remained at the window and observed Payne during all but a moment of the entire intrusion.

(4) Sandra described Payne as an eighteen-year-old black male, 5'7", 130 pounds, wearing dark pants, a T-shirt, and a gray jacket with a hood. Although Payne is actually a forty-one-year-old black male, who is 5'10" and weighs 190 pounds, his clothing did match Sandra's description.

(5) Sandra identified Payne as the burglar only two and one-half hours after the crime.

(6) At trial, Sandra again unequivocally identified Payne as the burglar.

(7) Sandra testified that she recognized Payne almost immediately upon seeing him, and Officer Favors confirmed that Sandra was not hesitant in her identification of Payne.

(8) Robert's description of the stolen mower exactly matched the mower found with Payne.

Sandra had ample opportunity to observe Payne during the burglary, and she identified him only two and one-half hours after the crime. Moreover, Sandra never identified anyone else and never wavered from her identification of Payne. While Sandra's original physical description of Payne is not a match, we note that she observed him from a distance of approximately twenty-five feet, in a well-lighted area, with an unobstructed view and that she observed his face two times during this episode. We conclude that Sandra's description of Payne does not vary to a degree to make her testimony inadmissible. *See Jackson v. State,* 657 S.W.2d 123, 128 (Tex.Crim.App. 1983) (variance in description goes to weight of evidence and not to admissibility).

In view of the totality of the circumstances, we conclude that Sandra's identification of Payne shortly after the burglary was not impermissibly suggestive, that it did not give rise to a substantial likelihood of misidentification, and that Sandra had an independent basis for her identification. Because we hold that the pretrial identification did not irreparably taint the in-court identification, we conclude that the trial court correctly admitted it into evidence. We overrule Payne's first point of error.

### THE HEARSAY TESTIMONY

In his second point of error, Payne complains that the trial court erred in admitting into evidence a hearsay statement implicating him as the burglar. Payne contends that the trial court improperly allowed Officer Favors to testify about statements Warren made while he was being detained. We determine, however, that Payne waived any error connected with these statements.

The Texas Court of Criminal Appeals has held that an exception to the hearsay rule exists where statements are made by third parties in the presence of the accused and the accused is not under arrest. *Crestfield v. State*, 471 S.W.2d 50, 54 (Tex.Crim.App. 1971), *cert. denied*, 406 U.S. 917, 92 S.Ct. 1764, 32 L.Ed.2d 115 (1972); *Hamilton v. State*, 682 S.W.2d 322, 323 (Tex.App.—Dallas 1984, pet. ref'd). "Where a statement or remark is made in the defendant's presence, which he understood and which called for his reply, his silence or acquiescence may be shown as a confession where he was not under arrest." *Crestfield*, 471 S.W.2d at 53. This rule is codified as rule 801(e)(2)(B) of the Texas Rule of Criminal Evidence. Tex.R.Crim.Evid. 801(e)(2)(B). *Tucker v. State*, 771 S.W.2d 523, 535 (Tex. Crim.App.), *cert. denied*, 492 U.S. 912, 109 S.Ct. 3230, 106 L.Ed.2d 578 (1989).

In this case, Payne was under arrest at the time Warren made the statement in his presence.

> [PROSECUTOR]: Was there any statement by Angelo Warren that morning during that traffic stop where—that he made about the ownership or how—anything about that lawn mower when the defendant was present?

> [FAVORS]: After the defendant was placed under arrest, the two of them were in the car and then he made a statement.

> [PROSECUTOR]: And the defendant was present at that time?

> [FAVORS]: They were both in the same car, yes.

> [PROSECUTOR]: What was the statement, then, when the defendant was present that Angelo Warren made regarding this lawn mower?

> [PAYNE'S ATTORNEY]: Again, Your Honor, I'm going to object as being hearsay, whether this man is in his presence or not. The fact that it may be against Mr. Warren's interest, if they want to try Mr. Warren, that's one thing, but my right is to have the opportunity to cross-examine whoever makes a statement. That's statements made out of this courtroom. I have no opportunity to cross-examine Mr. Warren. It's hearsay, and I'll object to it on that grounds.

> [THE COURT]: Overruled. You may answer the question.

> [PROSECUTOR]: What was the statement that Warren made?

> [FAVORS]: He said it was not his lawn mower, that he had picked up Mr. Payne as Mr. Payne was pushing the lawn mower down the street.

Because Payne was under arrest at the time of the statement, the testimony should have been excluded in the face of a proper objection. However, Payne improperly objected on the basis of hearsay. "The proper objection would have been that the appellant was under arrest at the time. The admission of such testimony was an infringement against the appellant's right against self incrimination and a violation of the confession statute." *Crestfield*, 471 S.W.2d 54; Tex.Code Crim.Proc.Ann. art. 38.22 (Vernon 1979). A hearsay objection waives error as to the violation of the confession statute. *Crestfield*, 471 S.W.2d at 54; *Gibson v. State*, 516 S.W.2d 406, 409 (Tex.Crim.App.1974). Because Payne failed to properly object to Officer Favors's testimony, nothing is preserved for our re-

view. We overrule Payne's second point and affirm the trial court's judgment.

KAPLAN, J., concurs.

KAPLAN, Justice, concurring.

I would hold that Angelo Warren's out-of-court statement implicating appellant as the perpetrator of the offense was inadmissible as an adoptive admission. I concur in the result reached by the majority only because this error was harmless under the circumstances presented in this case.

## FACTS

Sandra Page called the police to report a burglary in progress. She saw a man enter her storage shed and take her lawn mower. Later that morning, two police officers stopped a car driven by Angelo Warren on an unrelated burglary warrant. Appellant was a passenger in Warren's car. The officers arrested Warren and searched the car. They found a lawn mower in the trunk. The officers learned that Page had reported a burglary and a stolen lawn mower. Appellant was placed under arrest.

Dallas Officer Karen Favors testified for the State at trial. Officer Favors said that she questioned Warren about the lawn mower in the presence of appellant. Warren stated "it was not his lawn mower, that he picked up [appellant] as [appellant] was pushing the lawn mower down the street." Appellant objected to this testimony as hearsay. The objection was overruled. The majority concludes that Warren's statement was admissible as an adoptive admission. TEX.R.CRIM.EVID. 801(e)(2)(B).

## ADOPTIVE ADMISSIONS

### 1. Applicable Law

A statement is not hearsay if it (1) is offered against a party and (2) is a statement of which the party has manifested his adoption or belief in its truth. TEX.R.CRIM. EVID. 801(e)(2)(B); *Tucker v. State,* 771 S.W.2d 523, 535 n. 5 (Tex.Crim.App.), *cert. denied,* 492 U.S. 912, 109 S.Ct. 3230, 106

L.Ed.2d 578 (1989); *Crestfield v. State,* 471 S.W.2d 50, 54 (Tex.Crim.App.1971), *cert. denied,* 406 U.S. 917, 92 S.Ct. 1764, 32 L.Ed.2d 115 (1972). In certain circumstances, silence may constitute an adoptive admission. The theory underlying an admission by silence is that normal human reaction would be to deny such a statement if untrue. 4 J. WEINSTEIN & M. BERGER, WEINSTEIN'S EVIDENCE ¶ 801(d)(2)(B)[01], at 801–262 (1991); H. WENDORF, D. SCHLUETER & R. BARTON, TEXAS RULES OF EVIDENCE MANUAL, at VIII–23 (1991).

The burden is on the proponent of evidence to establish the proper predicate for admission. *Davis v. State,* 645 S.W.2d 288, 291 (Tex.Crim.App.1983). In order to establish an adoptive admission by silence, the proponent must show that the party against whom the evidence is offered (1) heard, (2) understood, and (3) acceded to the statement. *See United States v. Monks,* 774 F.2d 945, 950–51 (9th Cir.1985). This preliminary question concerning the admissibility of evidence should be decided by the trial court. TEX.R.CRIM.EVID. 104(a); *see United States v. Sears,* 663 F.2d 896, 904 (9th Cir.1981), *cert. denied,* 455 U.S. 1027, 102 S.Ct. 1731, 72 L.Ed.2d 148 (1982).[1]

### 2. Application of Law to the Facts

The record in this case conclusively negates any basis for the admission of Warren's statement. The State failed to show that appellant remained silent or otherwise demonstrated his adoption of the statement. The testimony regarding this out-of-court statement was inadmissible hearsay.

Officer Favors testified that Warren made a statement about the lawn mower in appellant's presence. She did not testify that appellant heard, understood, or acceded to the statement. The prosecutor made no attempt to establish that appellant adopted the statement by silence or otherwise. The State failed to lay the proper predicate for admission of this statement as an adoptive admission. *See Monks,* 774

1. Rule 801(e)(2)(B) of the Texas Rules of Criminal Evidence is virtually identical to the comparable provisions of the Federal Rules of Evidence. FED.R.EVID. 801(d)(2)(B). We consider cases and commentaries construing the Federal Rules of Evidence instructive when interpreting the Texas rules. *Montgomery v. State,* 810 S.W.2d 372, 387 n. 2 (Tex.Crim.App.1991); *Garcia v. State,* 833 S.W.2d 564 (Tex.App.—Dallas 1992).

F.2d at 950–51. *But cf. Gilliland v. State,* 786 S.W.2d 385, 386 (Tex.App.—Beaumont 1990, no pet.) (record established that the appellant was in a position to hear the declarant and never denied what declarant said).

Additionally, the testimony of Officer Favors on cross-examination affirmatively demonstrates that appellant did *not* adopt Warren's statement. Officer Favors testified as follows:

> Q [DEFENSE COUNSEL]: And Angelo Warren was the name of the driver; is that correct?
>
> A [OFFICER FAVORS]: Yes, sir.
>
> Q: Mr. Warren denied ownership of the vehicle—the lawn mower I understand?
>
> A: Yes, sir.
>
> Q: [*Appellant*] *also denied ownership of that mower, didn't he?*
>
> A: *Yes, sir.*

(Emphasis added).

Warren denied ownership of the lawn mower found in the trunk of his car. His statement to Officer Favors implied that appellant had some connection to the lawn mower. The record reveals that appellant was not silent—he specifically denied that he owned the lawn mower. Appellant's inconsistent statement precludes any determination that he manifested an adoption or belief in the truth of Warren's statement.

Warren's statement to Officer Favors was not admissible as an adoptive admission. I would hold that the trial court erred in overruling appellant's hearsay objection.

### HARM ANALYSIS

We must reverse the trial court's judgment unless we determine beyond a reasonable doubt that the improperly admitted evidence made no contribution to conviction or punishment. TEX.R.APP.P. 81(b)(2); *Harris v. State,* 790 S.W.2d 568, 587 (Tex. Crim.App.1989). We do not focus upon the propriety of the outcome, but upon the integrity of the process leading to the conviction. *Harris,* 790 S.W.2d at 587. The relevant factors include: (1) the source of the error, (2) the nature of the error, (3) whether or to what extent it was emphasized by the State, (4) its probable collateral implications, (5) the weight a juror would probably place upon the error, and (6) whether declaring the error harmless would encourage the State to repeat it with impunity. *Id.* We isolate the error and all of its effects, using the listed factors and any other pertinent considerations. We then determine whether a rational trier of fact might have reached a different result in the absence of the error and its effects. *Id.* at 588.

The source and nature of the error was the admission of hearsay evidence that implicated appellant as the perpetrator of the offense. This testimony was elicited by the State through Officer Favors. The prosecutor alluded to Warren's statement at trial and once during jury argument. Although the State clearly relied on this evidence, it was not emphasized in a manner disproportionate to its limited weight. I do not perceive any collateral implications in holding this error harmless, nor will the State be encouraged to repeat its action with impunity.

It is unlikely that a jury would place substantial weight upon the error. Sandra Page identified appellant as the person who took her lawn mower. She had ample opportunity to observe appellant during the burglary and identified him less than three hours later. Although there were some discrepancies between the description given by Page and appellant's actual appearance, there were also a number of similarities. I doubt that the jury would have placed much weight on Warren's hearsay statement in view of Page's eyewitness identification testimony.

I conclude beyond a reasonable doubt that the erroneous admission of the statement made no contribution to appellant's conviction or the punishment. Accordingly, I concur in this Court's judgment.