# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 19-20431

United States Court of Appeals
Fifth Circuit

**FILED**

March 4, 2020

Lyle W. Cayce
Clerk

JONATHAN FORBES,

> Plaintiff–Appellant

v.

HARRIS COUNTY, TEXAS; LUCAS PAIGE,

> Defendants–Appellees

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:17-CV-2256

Before WIENER, STEWART, and WILLETT, Circuit Judges.

PER CURIAM:*

Jonathan Forbes sued Deputy Lucas Paige for alleged Fourth and Fourteenth Amendment violations, arguing, among other things, that Deputy Paige arrested Forbes and subjected him to a blood draw in violation of his constitutional rights. The district court granted summary judgment in favor of Deputy Paige. We agree that Forbes fails to raise a genuine dispute of material fact and thus affirm.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 19-20431

I

In the wee hours, around 2:30 a.m., Deputy Paige observed a "brand new Corvette" in the far-right lane of the Hardy Toll Road in Houston. He claims the car was swerving, so he initiated his dashboard camera.[1] Deputy Paige drove closer to the Corvette, with both cars traveling about sixty miles per hour in a sixty-five mile per hour zone. As Deputy Paige approached the Corvette from the middle lane, the sports car shifted gears and sped away. Deputy Paige flipped on his lights and siren and pursued the fleeing vehicle, reaching a top speed of 109 miles per hour before the Corvette pulled over on the right shoulder of the highway.

Deputy Paige approached the driver and asked him to turn off the car's engine. The driver, Forbes, complied and produced his driver's license. Deputy Paige and Forbes exchanged brief pleasantries before the deputy asked, "What was that about?," referring to Forbes's acceleration. Forbes responded, "I am a dumb a**." Deputy Paige asked Forbes a few questions about his whereabouts that evening, and Forbes claimed he was coming from dinner at a restaurant. Given the hour, Deputy Paige further inquired if Forbes was eating dinner until 2:00 a.m. Forbes answered, "Pretty much, yeah."

Deputy Paige then asked Forbes to step out of the Corvette and stand near the trunk. The deputy performed a protective pat down and asked Forbes how much he had had to drink that night. Forbes did not offer an oral reply, but put his hands out as if offering his wrists for handcuffs. Deputy Paige asked, "That much?" Again, Forbes did not reply. Deputy Paige then asked, "You're not gonna say anything?" This time, Forbes answered, "No, sir."

---

[1] "A court of appeals need not rely on the plaintiff's description of the facts when the record discredits that description but should instead consider 'the facts in the light depicted by the videotape.'" *Carnaby v. City of Houston,* 636 F.3d 183, 187 (5th Cir. 2011) (quoting *Scott v. Harris,* 550 U.S. 372, 381 (2007)).

No. 19-20431

Deputy Paige handcuffed Forbes, patted him down a second time, and placed him in the patrol car.

When the pair arrived at the Houston Police Department, Deputy Paige asked Forbes to provide a breath or blood sample. Forbes declined. So Deputy Paige sought a warrant to conduct a blood draw. The warrant affidavit, which Deputy Paige reviewed and signed but did not transcribe, provided that:

> [O]n July 25, 2015[,] at approximately 2:35AM, [I] was on patrol on 20300 Hardy Toll Rd., a public place and public road located in Houston, Harris County, Texas when [I] observed a white 2015 Chevrolet Corvette motor vehicle weaving inside of its traffic lane. As [I] got closer to the Corvette, [I] observed it to rapidly accelerate away from [me] so [I] conducted a traffic stop, made contact with the driver of the Corvette and identified him by his Texas Driver's License . . . as Jonathan Robert Forbes. I came into contact with [Forbes] and noticed him to have slurred speech, glossy red eyes and a mild odor of an alcoholic beverage emitting from his breath and person. I asked [Forbes] to perform some field sobriety tests to determine [his] level of intoxication, including the Horizontal Gaze Nystagmus Test, the One Leg Stand Test[,] and the Walk and Turn Test. . . .
>
> [Forbes] refused to perform the Horizontal Gaze Nystagmus Test, the One Leg Stand Test[,] and the Walk and Turn Test.
>
> Therefore, I placed [Forbes] under arrest and transported [him] to the police station. At the station, [I] offered [Forbes] an opportunity to provide a sample of [his] breath and/or blood and [Forbes] declined to provide a sample. This is a violation of the Texas Implied Consent law and is also an indication to me that [Forbes] is attempting to hide evidence of [his] level of intoxication.

The magistrate judge issued a warrant for a blood draw, which was taken around 4:00 a.m., an hour and a half after the traffic stop. Forbes's blood-alcohol content was 0.09,[2] exceeding the legal limit of 0.08.

---

[2] Forbes's blood-alcohol content was tested twice. The initial testing revealed a BAC of .101; the second test, conducted months later, revealed a BAC of .09.

No. 19-20431

The case against Forbes was eventually dropped,[3] and Forbes brought suit against Deputy Paige and Harris County, asserting Fourth, Fifth, and Fourteenth Amendment violations under 42 U.S.C. § 1983. Forbes alleged that Deputy Paige arrested him without probable cause and made misrepresentations to the magistrate judge to obtain the blood-draw warrant. He also alleged that Harris County had a policy or custom of making DWI arrests without probable cause and was deliberately indifferent to the need for training. The district court granted summary judgment against Forbes on each claim.

On appeal, Forbes challenges only the district court's grant of summary judgment with respect to Deputy Paige. He asserts that Deputy Paige (1) violated the Fourth Amendment when he placed Forbes under arrest; and (2) violated the Fourth and Fourteenth Amendment when he made false representations to secure the blood-draw warrant.

II

We review a district court's summary-judgment decision de novo, applying the same standards as the district court. *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010). Summary judgment must be granted when "the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the nonmovant. *Hamilton v. Seque Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). And a fact is material if its resolution could affect the outcome of the action. *Id.*

---

[3] The reason is undocumented, but Forbes claims the case was dropped in part because the results of the blood test were unreliable.

No. 19-20431

At this stage, we review all facts and draw all reasonable inferences in the light most favorable to Forbes, the nonmoving party. *Cuadra*, 626 F.3d at 812. In cases such as this one, however, when the burden of proof at trial ultimately rests on the nonmovant, the moving party "must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case," while the nonmovant "must come forward with specific facts showing that there is a genuine issue for trial." *Id.* (internal quotations omitted). We are "not required to accept the nonmovant's conclusory allegations, speculation, and unsubstantiated assertions which are either entirely unsupported, or supported by a mere scintilla of evidence." *Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 245 (5th Cir. 2016) (internal quotation omitted). And ultimately, we may "affirm a grant of summary judgment on any grounds supported by the record and presented to the district court." *Cuadra*, 626 F.3d at 812 (internal quotation and alterations omitted).

## III

### A

Deputy Paige did not violate Forbes's Fourth Amendments rights when he arrested him without a warrant.[4] A warrantless arrest violates a suspect's Fourth Amendment rights "if the arresting officer lacks probable cause to

---

[4] Most often, these claims come before us on a question of whether the district court erred in granting the officer qualified immunity. Here, however, the district court did not grant summary judgment in favor of Deputy Paige because he was entitled to qualified immunity; it instead found summary judgment proper because Deputy Paige, as a matter of law, had probable cause to justify the warrantless arrest. The court, in one sentence, noted: "And even if there was not actual probable cause, Deputy Paige would be entitled to qualified immunity because his conclusion that he had probable cause to arrest Forbes for DWI was a reasonable one under the circumstances." Because our probable cause analysis and the first step of the qualified immunity analysis are the same, *see, e.g.*, *Hale v. Townley*, 45 F.3d 914, 917 (5th Cir. 1995) ("The first step [of the qualified immunity analysis] is to determine whether the plaintiff has alleged the violation of a constitutional right."), and we find that Deputy Paige had probable cause to arrest Forbes, summary judgment is proper on either ground.

believe that the suspect has committed a crime." *Bodzin v. City of Dallas*, 768 F.2d 722, 724 (5th Cir. 1985). Probable cause exists when the facts and circumstances within the officer's knowledge "are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009) (internal quotation omitted). This "is not a high bar." *Kaley v. United States*, 571 U.S. 320, 338 (2014). The Supreme Court has explained that "[b]ecause probable cause deals with probabilities and depends on the totality of the circumstances, . . . it is a fluid concept that is not readily, or even usefully, reduced to a neat set of legal rules." *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018) (internal quotations omitted). As long as "the officer was aware of facts justifying a reasonable belief that an offense was being committed, whether or not the officer charged the arrestee with that specific offense," the probable-cause standard is satisfied, and the arrest is permissible. *Club Retro*, 568 F.3d at 204.

Here, Deputy Paige claims that he had probable cause for the arrest because Forbes (1) was swerving within his lane, (2) accelerated haphazardly to over 100 miles per hour, (3) smelled faintly of alcohol, (4) slurred his speech, (5) had "pretty much" been at a restaurant until 2:00 a.m., (6) appeared to have glossy, red eyes, and (7) refused to answer how many drinks he had consumed, instead holding his hands out as if yielding to being handcuffed.

Forbes contends that he has raised a genuine dispute of material fact as to probable cause because he (1) did not smell of alcohol, (2) was not slurring his speech, and (3) did not have glossy, red eyes. And he insists that, without these facts, no reasonable officer could have found probable cause to execute an arrest for driving while intoxicated.

6

No. 19-20431

First, we disregard Forbes's claim on appeal that he did not have glossy, red eyes as it contradicts his sworn deposition testimony, in which Forbes agreed his eyes were red but blamed the redness on either his allergies or the late hour. As for the other two facts, even assuming, without deciding, that Forbes raised a genuine factual dispute regarding whether he smelled of alcohol or slurred his words, the dispute is not "material" as its resolution cannot affect the outcome of the action. *See Hamilton*, 232 F.3d at 477; *see also Evett v. DETNTFF*, 330 F.3d 681, 687 (5th Cir. 2003) (observing that we may determine the materiality of facts supporting a finding of probable cause). Deputy Paige still had probable cause to arrest Forbes for driving while intoxicated. Deputy Paige pulled Forbes over after Forbes accelerated away from the deputy at a high rate of speed; Forbes claimed to have "pretty much" been eating dinner until 2:00 a.m., after the bars, and long after most restaurants, had closed. Forbes also refused to answer how many drinks he had consumed that evening, instead holding his arms out as if surrendering to handcuffs. From these facts a reasonable officer would believe that Forbes was committing a crime—specifically, driving while intoxicated.[5] *Cf., e.g.*, *Kirsch v. State*, 306 S.W.3d 738, 745 (Tex. Crim. App. 2010) (providing indicia of intoxication); *Zill v. State*, 355 S.W.3d 778, 785 (Tex. App.—Houston 2011) (same). We, therefore, affirm the district court's grant of summary judgment on this issue.[6]

---

[5] Under Texas law, "[a] person commits an offense if the person is intoxicated while operating a motor vehicle in a public place." Tex. Penal Code § 49.04(a). "Intoxicated" is defined as (1) "not having the normal use of mental or physical faculties by reason of the introduction of alcohol" or another substance; or (2) "having an alcohol concentration of 0.08 or more." *Id.* § 49.01(2).

[6] Even if Deputy Paige did not have probable cause to arrest Forbes for driving while intoxicated, we have recognized that an arrest is valid as long as the officer had reasonable suspicion that *any* crime had been, was being, or was about to be committed, "whether or not the officer charged the arrestee with that specific offense." *Club Retro*, 568 F.3d at 204. Speeding may not be an arrestable offense under Texas law, *see* Tex. Trans. Code §

No. 19-20431

B

Deputy Paige likewise did not violate Forbes's constitutional rights in securing the blood-draw warrant. Forbes alleges that Deputy Paige falsified the affidavit supporting the warrant, flouting Forbes's Fourth and Fourteenth Amendment rights. Forbes first notes that the affidavit claims Deputy Paige conducted field-sobriety tests, though he did not. He is correct on this point, and Deputy Paige admits that this detail was included in the affidavit erroneously. When an affidavit contains faults, such as this one, we review the affidavit as if the faulty statements were removed and independently assess whether the corrected attestation still supports the issuance of the warrant. *See Arismendi v. Gabbert*, 919 F.3d 891, 898 (5th Cir. 2019).

So, we now consider Deputy Paige's affidavit as though it only contains the following facts: Forbes (1) was weaving inside his traffic lane; (2) rapidly accelerated away from the officer; (3) slurred his speech; (4) had glossy, red eyes; (5) smelled mildly of alcohol; and (6) refused to provide a blood or breath sample. These facts, exclusive of Deputy Paige's misstatements, would support probable cause for a blood-draw warrant. *See, e.g.*, *Schmerber v. California*, 384 U.S. 757, 768–69 (1966) (finding probable cause when accused had been in a car accident and smelled of alcohol and his eyes were bloodshot, watery, and glossy in appearance); *Foley v. State*, 327 S.W.3d 907, 912 (Tex. App.—Corpus Christi-Edinburg 2010) (finding probable cause when affidavit reported that

---

543.004(a), but reckless driving certainly is, *see id.* § 545.401 (defining "reckless driving" as "driv[ing] a vehicle in wilful or wanton disregard for the safety of persons or property"). Here, Deputy Paige observed Forbes hot rod his vehicle from sixty miles per hour to over 100 miles per hour on a dark highway where other cars and trucks were traveling, providing probable cause of reckless driving. *Tex. Dep't of Pub. Safety v. J.W.D.*, 2014 WL 7464229, at *2 (Tex. App.—Austin Dec. 31, 2014) (noting reckless driving conviction when defendant drove 100 miles per hour on highway); *Kirsch v. State*, 2008 WL 5102316, at *3 (Tex. App.—Houston Dec. 4, 2008) (finding that jury had sufficient evidence to conclude that defendant drove recklessly "by operating his motor vehicle at an excessive speed").

accused refused to provide a breath or blood sample, smelled of alcohol, had red and glossy eyes, slurred speech, and poor balance).

But that is not the end of our inquiry. Forbes argues that Deputy Paige's affidavit was falsified—beyond Deputy Paige's admitted misstatements— because Forbes, in his belief, was not swerving, was not slurring his speech, did not have glossy or reddened eyes, and did not smell of alcohol.[7] Despite Forbes's claims of dishonesty, "[t]here is . . . a presumption of validity with respect to the affidavit supporting [a] search warrant." *Franks v. Delaware*, 438 U.S. 154, 171 (1978). To overcome this presumption, "the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine." *Id.* Forbes therefore is required to not only allege that Deputy Paige deliberately, or with reckless disregard for the truth, attested to falsehoods, but Forbes is also required to offer *proof* of deliberate falsities. *Id.* Even a proven misstatement, if made negligently instead of intentionally or recklessly, will not be vitiated if Forbes does not provide evidence "directly illuminating the state of mind of [Deputy Paige]."[8] *United States v. Martin*, 615 F.2d 318, 329 (5th Cir. 1980).

Aside from the admitted misstatement regarding field-sobriety testing, Forbes has not offered any evidence to support a finding that Deputy Paige made false statements in the first instance, let alone that he did so intentionally or recklessly. Forbes relies on conclusory allegations and

---

[7] Without support, Forbes insists that the deputy could not have smelled alcohol on his breath or person because he had purchased vodka drinks that night, and vodka is an odorless beverage. We find this argument unavailing. *Cf. Smith v. Ramirez*, 2014 WL 4070202, at *5 n.4 (N.D. Ill. Aug. 14, 2014) (noting that, though vodka is a neutral spirit "without distinctive character aroma," this "is not equivalent to being completely odorless." (internal quotation omitted)).

[8] We have acknowledged that this high bar will doubtless make it difficult for an accused to meet his burden. But that does not excuse him of his obligation to show more than mere negligence. *Martin*, 615 F.2d at 329.

speculation to support his claims of falsity, to which we give no credence when reviewing a summary-judgment order.[9] *See Heinsohn*, 832 F.3d at 245. We therefore review the corrected affidavit with the enumerated facts above, which, as noted, sufficiently established probable cause to obtain a blood sample. Because Forbes has not raised a genuine dispute of material fact regarding whether the corrected affidavit was tainted, and the corrected affidavit provided probable cause to issue the blood-draw warrant, summary judgment was proper.

## IV

Although we review the facts in the light most favorable to the nonmoving party on summary-judgment review, Forbes was required to provide more than conclusory allegations of wrongdoing. Because he has failed to meet his burden, and no genuine disputes of material fact remain for trial, we AFFIRM the district court's grant of summary judgment.

---

[9] The only outside evidence Forbes points to is Deputy Paige's dash-cam video, which Forbes claims "does not support allegations of erratic driving, slurred speech, glossy eyes, or odor." This argument misunderstands the summary-judgment standard. Deputy Paige is not required to provide evidence to challenge Forbes's allegations of falsehoods; it is Forbes who must bear the burden of providing evidence sufficient to demonstrate a genuine dispute of material fact. *See Cuadra*, 626 F.3d at 812.